THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

CHANNEL

# Business Loan and Security Agreement

**Loan Date** (inserted by Lender upon funding): 12/16/2025 **Agreement #:** [redacted]37-1M

## I. Borrower Information

**Borrower Name:** Imagination Concepts, LLC

**Business Address:** 429 West Ohio Street, #112 Chicago IL, 60654

## II. Payment Information

| | |
|---|---|
| **Loan Amount:** | $200,000.00 |
| **Loan Payment (Monthly):** | $15,555.56 |
| **Payment Frequency:** | Monthly |
| **Number of Loan Payments:** | 18 |
| **Origination Fee (Included in Loan Amount):** | $5,000.00 |
| **Total Loan Payments:** | $280,000.08 |

***All Loan Payments will be drafted by ACH each month beginning on the first business day 15 days after the Loan Amount is disbursed ("Funding Date").** Any remaining balance and all other amounts payable hereunder are due on the Maturity Date. "Business Day" means any Monday through Friday, except Federal Reserve holidays. The term of this Loan begins on the Loan Date. Borrower hereby directs Lender to pay the Origination Fee from the Loan Amount.

## III. Borrower Information for Monthly ACH Loan Payments

| | |
|---|---|
| **Bank Institution Name:** | Bank of America |
| **Borrower Account #:** | [redacted] |
| **Routing #:** | [redacted] |

**Please upload a voided check (Optional):**

**BORROWER AUTHORIZES LENDER TO WITHDRAW BY ACH ALL LOAN PAYMENTS AND OTHER SUMS DUE HEREUNDER FROM THE ABOVE ACCOUNT.** BORROWER REPRESENTS, WARRANTS AND AGREES THAT THIS ACCOUNT IS NOT AND WILL NOT BE USED FOR PERSONAL, FAMILY, HOUSEHOLD, RESIDENTIAL OR AGRICULTURAL PURPOSES BUT ONLY FOR BORROWER'S BUSINESS.

## TERMS AND CONDITIONS

**1. LOAN. "Loan Agreement"** means this Business Loan and Security Agreement. **"Loan"** means any loan, advance, forbearance, or extension of credit made by Lender hereunder. **"Lender"** means **Channel Partners Capital, LLC** and its successors and assignees. **"Borrower"** means the Borrower named above. Borrower promises to pay Lender the Total Loan Payments as set forth in Section II, together with any other fees, charges or amounts described herein, less any applicable prepayment discount contained in Section 4 below. Borrower agrees to remit to Lender by ACH from the bank account shown above the Loan Payments set forth above and all other sums when due and payable. Borrower may request a modification of the due date of the monthly payment and the Lender in its sole discretion will determine whether to (i) grant the Borrower's request and (ii) charge a fee for the due date modification. Borrower agrees to notify Lender in writing BEFORE Borrower closes that bank account or opens a new primary deposit or checking account for payment authority. BORROWER'S OBLIGATION TO REMIT PAYMENTS TO LENDER UNDER THIS LOAN AGREEMENT IS ABSOLUTE AND UNCONDITIONAL AND SHALL NOT BE SUBJECT TO SET-OFF, ABATEMENT, SUSPENSION, DEFERMENT, REDUCTION, CLAIM, COUNTERCLAIM OR DEFENSES OF ANY NATURE WHATSOEVER.

COPY VIEW

EXHIBIT
tabbies
1

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**2. OTHER CHARGES; LATE PAYMENT; FEES.** Borrower agrees to file for, pay promptly, and indemnify and hold harmless Lender against all fees, assessments and taxes, penalties and interest against its business and property. Borrower agrees to pay and indemnify and hold harmless Lender against all other expenses, losses, claims and attorneys' fees and costs arising out of Borrower's business or this Loan Agreement. Lender may take on Borrower's behalf any action required under this Loan Agreement which Borrower fails to take and upon receipt of Lender's invoice Borrower will pay all costs incurred by Lender in such action, plus reasonable processing fees. BORROWER AGREES TO PAY A LATE CHARGE EQUAL TO 15% OF THE MONTHLY LOAN PAYMENT IF THE PAYMENT IS NOT PAID WITHIN FIVE (5) DAYS OF DUE DATE (NOT TO EXCEED THE LOWER OF 15% OF THE LOAN AMOUNT OR THE MAXIMUM AMOUNT PERMITTED BY LAW). LENDER MAY CHARGE $25.00 FOR ANY ACH PAYMENT REFUSED BY BORROWER'S BANK FOR ANY REASON (NOT TO EXCEED THE MAXIMUM AMOUNT PERMITTED BY LAW). The Origination Fee shown on Page 1 includes the cost of processing Borrower's application and credit information and other expenses but it and other fees hereunder may not reflect the actual amount expended and may include a profit to Lender. Borrower agrees that it will pay to Lender all reasonable attorneys' fees and all court costs and other expenses incurred in collecting upon amounts due under this Loan Agreement or otherwise enforcing the terms of this Loan Agreement upon demand and whether or not suit is or has been filed.

**3. SECURITY INTEREST; AGREEMENTS.** As security for the payment of any of Borrower's obligations and liabilities to Lender of any nature whatsoever, direct or indirect, absolute or contingent, now existing or hereafter contracted or acquired, to Lender pursuant to this Loan Agreement and any renewals, extensions and modifications hereof, Borrower hereby gives, grants and assigns to Lender a continuing security interest in all of Borrower's personal property assets including, but not limited to, business equipment, inventory, accounts, accounts receivable, intellectual property, chattel paper, instruments, deposit accounts, commercial tort claims, contract rights, licenses, claims, general intangibles and any other assets and properties of any kind whatsoever, whether now owned or hereafter acquired, wherever located, together with all proceeds including insurance proceeds (the **"Collateral"**). Borrower will keep the Collateral in its possession at the address shown above, maintain the tangible Collateral in good working order and replace any Collateral lost or destroyed, and give Lender reasonable access to inspect the Collateral and any and all of Borrower's books and records. Borrower agrees, at its cost, to: (a) keep the Collateral insured against all risks of physical loss or damage for its full replacement value, (b) maintain public liability insurance in amounts and with carriers consistent with prudent business practice, and (c) upon Lender's request, provide satisfactory evidence of such insurance. Borrower authorizes Lender to prepare and file, electronically or otherwise, one or more financing statements and any amendment thereto or continuation or assignment thereof relating to the Collateral, describing the Collateral as all assets and containing any other information required by the applicable Uniform Commercial Code (the "UCC"). Borrower will not, without Lender's prior written consent, incur any debt other than in the ordinary course of business, change its name, change its state or type of business organization, merge, consolidate or otherwise combine with any business entity or sell more than one quarter of the ownership or assets of Borrower. Borrower agrees that Lender has not furnished Borrower any business or other advice or made any representations, warranties or agreements not stated in this Loan Agreement.

**4. PREPAYMENT.** BORROWER AGREES THAT LOANS MAY NOT BE PREPAID EXCEPT AS FOLLOWS: Provided the borrower is not in default hereunder, borrower, from the Borrower Account listed in Section III above, may prepay the Business Loan Agreement in full less five percent (5%) of the remaining payments as determined by the Lender's records along with any fees or other amounts due hereunder.

**5. DEFAULT & REMEDIES.** Borrower agrees that it will be in default under this Loan Agreement (a "Default") if: (a) Lender is unable to collect monthly Loan Payments and Borrower fails to deliver said Loan Payments to Lender in immediately-available funds within five (5) days from when monthly Loan Payment was due; (b) Borrower breaches any other obligation under this Loan Agreement or is guilty of any misrepresentation to Lender at any time, including in any credit application; (c) a petition is filed by or against Borrower or any guarantor under any bankruptcy or insolvency law; or (d) there exists an Adverse Change. As used herein, "Adverse Change" means: (i) a negative change in (A) Borrower's or any Guarantor's financial condition from the condition existing prior to such change or on the Loan Date, or (B) the properties, assets, business, operations or prospects of such person, which in either event Lender reasonably believes might materially and adversely affect Borrower's or such Guarantor's ability to perform Borrower's or its obligations under this Loan Agreement; or (ii) a default by Borrower or any Guarantor under any loan or other agreement with a bank or financial institution. Upon the occurrence of a Default, Lender may, in its sole discretion, exercise all rights and remedies available to Lender under the law or at equity, including the UCC. Additionally, Lender may declare all Loan Payments along with any other amounts due hereunder, immediately due and payable less five percent (5%) of the remaining unpaid payments as determined by the Lender's records. The obligations and liabilities accelerated thereby shall bear interest at the lower of eighteen percent (18%) per annum or the maximum rate allowed by applicable law. Borrower shall be liable for any deficiency in case of sale of Collateral if repossessed by Lender. All such remedies are cumulative and, to the extent permitted by law, may be exercised concurrently or separately. Failure by Lender to exercise any option under this Loan Agreement will not constitute a waiver of the right to exercise the same in the event of any subsequent default.

**6. ASSIGNMENT.** Borrower agrees that Borrower may not voluntarily or by operation of law delegate any of its obligations under this Loan Agreement but nothing in this sentence releases Borrower's heirs or successors. Lender may, without notifying Borrower, assign this Loan Agreement or any of Lender's rights hereunder and release information Lender has about Borrower, Guarantor and this Loan Agreement to any prospective investor, participant or purchaser of this Loan Agreement. If Lender does assign this Loan Agreement or any rights hereunder, Borrower agrees not to assert against Lender's assignee any claims Borrower may have against Lender.

**7. ENFORCEMENT OPTIONS.** Borrower agrees that any Loan may, at Lender's option, be enforced without first resorting to or exhausting any remedy Lender may have, including remedies against any of the Collateral.

COPY VIEW

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**8. CREDIT REPORTING.** BORROWER AND GUARANTOR AUTHORIZE LENDER AND ANY CREDIT REPORTING AGENCY LENDER ENGAGES TO (1) INVESTIGATE REFERENCES AND INFORMATION OBTAINED FROM OR ABOUT BORROWER OR GUARANTOR FOR THE PURPOSE OF ANY LOAN, (2) OBTAIN BORROWER'S AND GUARANTOR'S BUSINESS AND PERSONAL CREDIT BUREAU REPORTS FROM TIME TO TIME, (3) report Borrower's and Guarantor's transaction and experiences with any Loan to credit bureaus and (4) release or use any credit information in connection with enforcement of Lender's rights hereunder. To the maximum extent permitted by law, Borrower and Guarantor waive any claim for damages relating to any such investigation or disclosure.

**9. INTEREST RATE.** ANYTHING HEREIN TO THE CONTRARY NOTWITHSTANDING: It is Lender's intention to comply strictly with applicable usury laws and not to receive, collect, or apply as interest any interest (including fees, charges or other payments deemed equivalent to interest under applicable law) in excess of the maximum rate of interest which Lender may lawfully charge under applicable law (the "Maximum Rate"). Accordingly, Lender has agreed and Borrower's obligations hereunder are limited by Lender's agreement that, in the event that Lender ever receives, collects, or charges any amount in excess of the Maximum Rate, such excess shall be applied to the reduction of the principal balance owed hereunder or if all principal and accrued lawful interest is paid in full, any remaining excess shall forthwith be paid to Borrower, or other party lawfully entitled thereto. Any provision hereof or of any other agreement between Borrower and Lender that operates to obligate or compel Borrower to pay interest in excess of the Maximum Rate shall be construed to require payment of the Maximum Rate only.

**10. COMMERCIAL TRANSACTION; USE OF LOAN.** THE LOAN MADE UNDER THIS LOAN AGREEMENT IS FOR BUSINESS PURPOSES ONLY and is not made for consumer, personal, family, household, residential or agricultural purposes. Borrower represents, warrants, and commits to Lender that Borrower will not use any of the amount loaned hereunder for consumer, personal, family, household, residential or agricultural purposes and Borrower will not distribute any of such amount as a dividend or other payment to shareholders, partners or owners of Borrower's business except salaries in the ordinary course.

**11. CONSENT TO MINNESOTA LAW, JURISDICTION, VENUE, AND WAIVER OF RIGHT TO JURY TRIAL.** THIS LOAN AGREEMENT SHALL BE GOVERNED BY, INTERPRETED, CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MINNESOTA, WITHOUT REGARD TO THE CONFLICT-OF-LAWS PRINCIPLES THEREOF. FOR PURPOSES OF ANY ACTION OR PROCEEDING INVOLVING THIS LINE AGREEMENT, THE BORROWER HEREBY EXPRESSLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF ANY FEDERAL OR STATE COURT SELECTED BY THE LENDER LOCATED IN THE STATE OF MINNESOTA. THE BORROWER HERBY CONSENTS TO THE JURISIDICTION AND VENUE OF SUCH COURT AND IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW THE RIGHT TO TRIAL BY JURY AND THE DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF ANY SUCH ACTION OR PROCEEDING.

**12. CLASS ACTION WAIVER.** BORROWER, LENDER, AND EACH GUARANTOR ACKNOWLEDGE AND AGREE THAT THE AMOUNT AT ISSUE IN THIS TRANSACTION AND ANY DISPUTES THAT ARISE BETWEEN THEM ARE LARGE ENOUGH TO JUSTIFY DISPUTE RESOLUTION ON AN INDIVIDUAL BASIS. EACH PARTY HERETO WAIVES ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION. ALL WAIVERS ARE MADE KNOWINGLY, VOLUNTARILY, AND WITHOUT DURESS.

**13. DISPUTE RESOLUTION.** The parties (including any Guarantors) agree to attempt to resolve all disputes arising out of or in connection with this Loan Agreement (including any questions regarding its existence, validity or termination) through discussions and negotiations between the respective party representatives and a mediator. If mediation does not resolve the dispute, then either party shall have the right to refer any such dispute to arbitration under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"). The arbitration shall be heard by a single arbitrator appointed by mutual agreement of the parties, if the parties are unable to agree, the arbitrator shall be appointed by the AAA who shall be a retired judge. The arbitration shall be conducted in Minneapolis, Minnesota unless the parties agree otherwise. The arbitrator may issue appropriate orders as well as a monetary award for compensatory damages. The arbitrator is not empowered to award damages in excess of compensatory damages or class action remedies and each party hereby irrevocably waives any damages in excess of compensatory damages. The parties shall continue to perform their respective obligations, including payment obligations, under the Loan Agreement during any consultation, mediation or arbitration proceeding in connection with such dispute. Notwithstanding any of the foregoing and without prejudice to the arbitration in accordance with this provision, the parties recognize in cases where time is of the essence, arbitration may not proceed with the speed required to protect the parties' interest. Therefore, either party may seek provisional remedies through the courts, including injunctive relief and replevin, pending final resolution of the dispute through arbitration.

COPY VIEW

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**14. MISCELLANEOUS.** All of Borrower's representations, warranties, indemnities, obligations and agreements shall survive repayment of any or all Loans or termination of this Loan Agreement. This Loan Agreement shall be binding upon and shall inure to the benefit of Borrower's and Lender's heirs, personal representatives, successors and assigns. Neither this Loan Agreement nor any term or provision hereof may be changed, modified, waived, discharged or terminated orally or in any manner other than by an instrument in writing, signed by Lender; and any request or notice to Lender must be in writing and delivered to Lender's address on the first page. Borrower agrees to perform any further acts and execute and deliver any documents which may be necessary to carry out the provisions of this Loan Agreement. Borrower acknowledges that Lender drafted this Loan Agreement as a convenience to Borrower and it should not be construed against the draftsman under any theory of construction. Restrictive endorsements on any checks Borrower sends to Lender will not be binding. Whenever possible, each provision of this Loan Agreement shall be interpreted in such manner as to be effective and valid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of the Loan Agreement.

Borrower acknowledges and agrees that it has had full opportunity to review this Loan Agreement and Borrower has had access to counsel of its choice to the extent Borrower deems necessary in order to interpret the legal effect hereof. Lender is authorized to make corrections to Borrower's name or other information inserted on page one or in Borrower's signature block, below. Lender is authorized to file any UCC financing statement for all assets of the Borrower or any other recording necessary to preserve its security interest. This Loan Agreement and any applicable financing statement(s) and guarantee(s) contains Borrower's entire agreement regarding the transactions contemplated hereby and supersedes all prior negotiations or agreements with Lender regarding the extension of credit contemplated hereby. BORROWER MAY REQUEST A COPY OF THIS LOAN AGREEMENT IN LARGER TYPE FOR REVIEW PRIOR TO SIGNING. This Loan Agreement may be executed in two (2) or more counterparts all of which together shall constitute one and the same agreement. Counterparts may be delivered via facsimile, electronic mail (including .pdf or any electronic signature complying with US Federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly delivered and be valid and effective for all purposes.

Lender is executing only one counterpart of this Loan Agreement. The counterpart bearing both (i) the Lender's original signature and (ii) the original, facsimile or electronically-mailed signatures of Borrower and any Guarantors shall be deemed the sole original counterpart and authoritative copy for all purposes and shall be admissible evidence of the Loan.

**15. COMMUNICATIONS.** Borrower and Guarantor agree that by providing Lender with their contract information (such as, an email address or telephone number for a wireless device), either now or in the future, Borrower and Guarantor expressly consent to receiving communications including email, voice and text messages from Lender or Lender's Assignees, regardless of their purpose, including but not limited to marketing or collection purposes. This consent is not a condition of doing business with, or making a purchase of any goods/services from Lender. These calls and messages may be subject to charges from your internet or wireless provider. Borrower and Guarantor may unsubscribe or opt-out of any further telemarketing calls or marketing text messages at any time.

**16. PROHIBITED TRANSACTIONS. So long as there is an outstanding balance on any Loan, Borrower will not directly or indirectly sell, assign or grant a security interest in, or otherwise authorize deductions or transfers from, any Borrower Account if such transaction requires or permits deductions or transfers from any Borrower Account more frequently than every 30 days, or over a period of 24 months or less. For purposes of the immediately-preceding sentence, "Borrower Account" means any (i) credit, debit, bank or other payment card receipts, (ii) customer payments, including those made by drafts, electronic funds transfers, or automated clearing house payments or (iii) accounts receivable, cash receipts, or deposit accounts owned by or payable to Borrower.**

COPY VIEW

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

**BORROWER: DO NOT SIGN THIS LOAN AGREEMENT UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS. BY SIGNING YOU CONFIRM THAT YOU HAVE IDENTIFIED TO LENDER ALL SHAREHOLDERS, OWNERS, PARTNERS AND MEMBERS OF YOUR BUSINESS.**

**Borrower Name:** Imagination Concepts, LLC

**Signature:** Signed by: Tiffany Webb 34814B982802477...

**Title:** CEO

**Date:** 12/15/2025 | 10:42:42 CST

**This Loan Agreement has been received and accepted by Lender in Minnesota after being signed by Borrower and any Guarantor(s) and is the SOLE ORIGINAL COUNTERPART and AUTHORITATIVE COPY. Lender is executing only one counterpart of this Loan Agreement.**

**Channel Partners Capital, LLC**

**By:** Jessica Doolittle

**Signature:** Signed by: Jessica Doolittle A214583F880D457...

**Title:** Funding Coordinator

**Date:** 12/16/2025 | 11:33:22 CST

COPY VIEW